# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DONNA CULLMAN,**

          **Plaintiff,**

    v.

**UNITED STATES POSTAL SERVICE,**
**PATRICK LAROSA,**

          **Defendants.**

Case No. 2:18-CV-01335-KAJ

Magistrate Judge Jolson

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 8), is before the Court on Defendant United States Postal Service's Motion for Summary Judgment. (Doc. 13). For the reasons that follow, the Motion is **GRANTED**.

**I.    BACKGROUND**

This is a slip and fall case arising under Ohio law. On February 9, 2015, Plaintiff Donna Cullman stopped by the Marysville Post Office (the "Post Office") to mail a package to her daughter. (Doc. 13-2, 32:16–18, 32:22–24, 34:25–35:11). Plaintiff recalls that the weather that day was sunny and clear. (*Id*., 35:17–18). She parked her car towards the entrance of the building near the handicapped parking space. (*Id*., 36:11–12, 51:3–18). Hoping to avoid other vehicles in the parking lot, she walked to the front of her car and immediately noticed a patch of ice marked with one orange warning cone. (*Id*., 36:13–23). Despite attempting to avoid the ice, she slipped and fell on the ice patch. (*Id*., 36:24–25). She later testified at her deposition that she had

attempted to walk around the ice patch but did not realize that it extended as far as it did. (*Id*., 36:23–24).

After Plaintiff fell, several Post Office employees and customers rushed to her aid, including a woman who returned Plaintiff's belongings to her car and a Post Office employee who attempted to fashion a cardboard splint for Plaintiff's leg. (*Id*., 43:12–18, 44:1–4). Paramedics arrived soon thereafter and transported Plaintiff to the hospital. (*Id*., 44: 7–17).

Below, is a photo of Plaintiff taken shortly after she fell:



(Doc. 13-1 at 4).

Plaintiff agrees that this photo, along with two others taken at the time, fairly represent the scene, including the ice patch and the location where she fell, with one possible discrepancy: Plaintiff recalls only a single cone on the ice before she fell. (Doc. 13-2, 50:19–25). She believes that, once she fell, Post Office employees must have rushed to place two additional cones to mark the ice. (*Id*., 55:8–15). But she does not have any evidence to support her belief, and she admits

that she did not witness anyone move the cones. (*See id*.). Postal worker Patrick LaRosa, who took the photographs, stated in his declaration that, after noticing the ice patch, he marked it with one cone and added two additional cones shortly thereafter. (Doc. 13-1, ¶¶ 5–8). According to him, the cones froze into the ice and were still there when Plaintiff fell. (*Id*., ¶¶ 9–10, 18).

At her deposition, Plaintiff testified that she did not try to avoid the ice by walking behind the parked cars because there was traffic in the parking lot. (Doc. 13-2, 59:8). Yet she admitted that she could have waited for the traffic to clear. (*Id*., 3–8). She also acknowledged there was "probably" some space between the ice patch and the car parked in the handicapped space. (*Id*., 56:7–10).

Plaintiff sued the United States Postal Service ("USPS") and Mr. LaRosa for negligence under the Federal Tort Claims Act ("FTCA"). (Doc. 1). Plaintiff subsequently dismissed her claims against Mr. LaRosa, (*see* Doc. 4), leaving USPS as the only Defendant in this case. The parties engaged in discovery, and Defendant moved for summary judgment on liability. (*See* Docs. 12, 13). That Motion is now fully briefed and ripe for resolution. (*See* Docs. 13, 14, 17).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable

3

jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III. DISCUSSION

In assessing a tort claim against the United States for monetary damages, the Court applies "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because Plaintiff fell at the Marysville, Ohio Post Office, Ohio law governs her claims. Under Ohio negligence law, a plaintiff must show that: (1) the defendant owed the plaintiff a duty; (2) the defendant breached its duty; and (3) the breach proximately caused the plaintiff's injuries. *Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1090 (Ohio 2003).

#### A. Duty

In premises liability cases, like this one, the scope of the landowner's duty depends on whether the plaintiff was a trespasser, licensee, or business invitee upon entering the premises. *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 723 (6th Cir. 2012) (citing *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996)). It is undisputed that Plaintiff, who came to the Post Office to mail a package, was a business invitee. *See Andler*, 670 F.3d at 717. "A shopkeeper owes business invitees," like Plaintiff, "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985) (citation omitted).

But there are exceptions to all rules, and a business owner owes no duty at all in certain circumstances. Relevant here, Ohio's "no-duty winter rule," provides that a business owner

"ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the premises or to warn invitees of the dangers associated with such natural accumulations of ice and snow." *Hosler v. Shah*, No. L-12-1066, 2012 WL 599213, at *2 (Ohio Ct. App. Nov. 30, 2012) (citation omitted). Because Plaintiff slipped and fell on a patch of ice outside of the Post Office, Defendant relies on Ohio's no-duty winter rule to argue that it owed no duty to Plaintiff. (*See* Doc. 13 at 15–17). And, alternatively, Defendant asserts that the more general open and obvious doctrine protects it from liability here. (Doc. 13 at 7–15). The Court considers both arguments.

### 1. *Ohio's "No-Duty Winter Rule"*

"[S]now and ice are part of wintertime life in Ohio." *Lopatkovich v. City of Tiffin*, 503 N.E.2d 154, 157 (Ohio 1986). Because of this fact, business invitees are assumed to appreciate the dangers associated with snow and ice and are responsible to protect themselves from those dangers. *Mosley v. Sandusky Schs.*, No. E-95-045, 1996 WL 184994, at *1 (Ohio Ct. App. Apr. 19, 1996) (citing *Sidle v. Humphrey*, 233 N.E.2d 589, 592 (Ohio 1968)). As an Ohio appellate court has explained, "[t]he knowledge that the law imputes to the plaintiff about natural accumulations of ice does not derive from the fact that a *particular* condition is visually obvious." *Cmty. Ins. Co. v. McDonald's Rests. of Ohio, Inc.*, No. 17051, 1998 WL 852772, at *4 (Ohio Ct. App. Dec. 11, 1998) (emphasis added). "Nor does it derive from the obviousness of other slippery conditions in the vicinity of the icy spot that actually causes injury." *Id*. Instead, "reasonable individuals" are assumed to "understand that winter conditions can create dangers from ice and snow[.]" *Id*. Said differently, it is not that patches of ice and snow are obvious. *Id*. What is obvious is the potential for dangerous conditions in the winter. *Id*. So "[d]angers from natural

accumulations of ice and snow are, therefore, generically treated by the law as open and obvious." *Id*.

Here, Plaintiff slipped and fell on a patch of ice—unfortunately, not an uncommon occurrence for an Ohio winter. As a result, Defendant relies on the no-duty winter rule. There are, however, two exceptions to the rule. First, it does not apply where the landowner had "superior knowledge of the particular danger" to that of its customers. *LaCourse v. Fleitz*, 503 N.E.2d 159, 160 (Ohio 1986). Nor does it apply where the landowner or occupier was "actively negligent in permitting or creating an unnatural accumulation of ice and snow." *Kaeppner v. Leading Mgt., Inc.*, No. 05AP-1324, 2006 WL 1932327, at *3 (Ohio Ct. App. July 13, 2006). As explained below, neither exception applies.

### a. Superior Knowledge Exception

Turning to the first exception, if a business owner "is shown to have had actual or implied notice that a natural accumulation of ice or snow on his or her property has created a condition substantially more dangerous than a business invitee should have anticipated by reason of knowledge of conditions prevailing generally in the area, negligence may be established." *Jackson v. J-F Ents., Inc.*, No. L-10-1285, 2011 WL 1167756, at *3 (Ohio Ct. App. Mar. 31, 2011) (quoting *Kaeppner*, 2006 WL 1932327, at *3). "In order to be liable under this exception, the defendant must have had superior knowledge of the existing danger." *Jackson*, 2011 WL 1167756, at *3 (citation omitted).

Plaintiff seems to invoke this exception. She asserts "that Defendant knew of the icy sheet covering its entrance sidewalk for some time[.]" (Doc. 14 at 4–5). But the problem for Plaintiff is that she knew about the ice, too. (*See* Doc. 13-2, 36:21–24). Her knowledge, therefore, was "at least equal" to Defendant's. *Jackson*, 2011 WL 1167756, at *3. And where a business and an

invitee "have equal knowledge of snow and ice on the premises," this exception "cannot be supported." *See id*. Her reliance on Defendant's knowledge of the ice patch fails as a result. *See, e.g.*, *id*. (holding that although there was evidence that the store manager knew the parking lot was icy, the plaintiff had equal knowledge of the hazard because she saw the ice before she fell).

Further, the purpose of this exception is to protect invitees against hazards that they could not reasonably have anticipated. *See Cooper v. Valvoline Instant Oil Change*, No. 07AP-392, 2007 WL 3257245, at *8 (Ohio Ct. App. Nov. 6, 2007) (citing *Mikula v. Tailors*, 263 N.E.2d 316, 322 (Ohio 1970) (holding that the no-duty winter rule did not apply to a deep, snow-covered hole in a parking lot because, unlike typical hazards associated with ice and snow, the plaintiff could not reasonably be expected to protect herself from the condition)). But no such protection is necessary where, like here, "a plaintiff, prior to a slip and fall, observes snow and ice and is aware of the associated dangers[.]" *Jackson*, 2011 WL 1167756, at *3. Said plainly, because Plaintiff saw the ice, she cannot now "claim[] she could not have anticipated said dangers." *Id*.

The first exception does not apply, and the no-duty winter rule remains intact.

**b. Unnatural Accumulation Exception**

Turning to the other exception, the no-duty winter rule is inapplicable where a landowner was "actively negligent in permitting or creating an unnatural accumulation of ice and snow." *Kaeppner*, 2006 WL 1932327, at *3. To show that the accumulation was unnatural, a plaintiff must set forth "some evidence of an intervening act by the landlord (or a property owner) that perpetuates or aggravates the pre-existing, hazardous presence of ice and snow." *Jackson*, 2011 WL 1167756, at *3 (quotation marks and citation omitted).

Defendant asserts that the ice patch formed naturally when water run-off from the Post Office's roof froze. (Doc. 13 at 17). And Defendant cites on-point case law to support its position.

7

(*See id.* (citing *Luft v. Ravemor, Inc.*, No. 11AP-16, 2011 WL 6927639, at *3 (Ohio Ct. App. Dec. 29, 2011) (noting that "melted run-off which accumulates and refreezes is not an unnatural phenomenon during Ohio winters"))).

In opposition, Plaintiff, for the first time, presents evidence that the ice formed from an unnatural accumulation of water. (Doc. 14-1). Specifically, she relies on the declaration of her expert, Gregory DuBois, a consulting engineer, who inspected the photographic evidence and the Post Office's premises. (*See id.*). In his declaration, Mr. DuBois states that, under its original construction, the drains on the Post Office's roof discharged onto a grassy area or landscaping surrounding the building. (*Id.*, ¶ 9). The Post Office later added a concrete pad over that grassy area. (*Id.*, ¶ 10). Consequently, the water now runs onto the concrete pad and onto the sidewalk where Plaintiff fell. (*Id.*). Mr. DuBois believes that run-off from melted snow pooled onto the concrete pad and ran onto the sidewalk, ultimately forming the ice patch on which Plaintiff fell. (*See id.* ¶¶ 11, 12). He thus concludes that the ice patch was not formed from a natural accumulation of water. (*Id.*, ¶ 13).

Defendant objects, justifiably so, to the use of this expert opinion when Plaintiff never disclosed it in discovery. (Doc. 17 at 12–13). But even considering the opinion, Plaintiff has satisfied only half of the "unnatural accumulation exception." Even if there is evidence that the ice patch formed from an unnatural accumulation of water, Plaintiff must also "submit evidence that the defendant was actively negligent in permitting and/or creating the unnatural accumulation." *Kaeppner*, 2006 WL 1932327, at *6 (citation omitted).

Plaintiff has failed to do so. She asserts simply that "Defendant knew of the hazardous ice for some time[.]" (Doc. 14 at 8). For evidence, she relies again on the declaration of Mr. LaRosa, who, at the time of Plaintiff's accident, had worked at the Marysville Post Office for only six

months, and stated that he noticed the ice patch "sometime prior" to Plaintiff's fall. (Doc. 13-1, ¶¶ 3, 4). Neither Plaintiff's conclusory statement nor Mr. LaRosa's declaration is evidence of active negligence. *Compare Tyrrell v. Inv. Associates, Inc.,* 474 N.E.2d 621, 623 (Ohio Ct. App. 1984) (holding that pharmacy could potentially owe a duty where the pharmacist had been "aware for several years that water occasionally dripped from the edge of the canopy and formed ice in front of his store") *with Evans v. Jeff Wyler Chrysler Jeep Dodge Ram of Springfield*, 111 N.E.3d 901, 922–23 (Ohio Ct. App. 2018) ("In other words, even if Wyler possessed a general awareness of a need to salt or resalt the area, such knowledge is insufficient to impute actual or constructive knowledge of the specific condition that Evans alleged existed near the large grate, and summary judgment was accordingly properly granted."); *Bryant v. Indus. Power Sys., Inc.*, 111 N.E.3d 827, 831 (Ohio Ct. App. 2018) (finding no active negligence where "the record contain[ed] no evidence that appellees were aware of the condition that caused the unnatural accumulation of ice"); *Sleeper v. Casto Mgt. Servs.*, No. 12AP-566, 2013 WL 3963459, at *10 (Ohio Ct. App. July 30, 2013) ("In the absence of some evidence indicating that Casna had knowledge of the leaky gutter, we cannot find that Casna was actively negligent in creating or permitting the ice to exist in the parking lot").

At bottom, all that Plaintiff has provided here is evidence of a potential unnatural accumulation and that Post Office employees knew that an ice patch had formed in front of the building. But what is notably absent is any evidence that employees knew of the ice patch's root cause and did nothing to remedy it. Absent such evidence, no reasonable juror could find that Defendant was actively negligent. This means that the no-duty winter rule negates Defendant's duty, and Plaintiff cannot succeed on her negligence claim. On this basis alone, summary judgment for Defendant is warranted.

## 2. *Open and Obvious*

And Defendant has another avenue to negate duty. Defendant argues that it need not rely on the no-duty winter rule because the ice patch was open and obvious. Again, Defendant is correct. *See, e.g*, *Unger v. U.S. Postal Serv.*, No. 3:06CV034, 2008 WL 11351323, at *5 (S.D. Ohio May 1, 2008) (holding that, even if the ice formed from an unnatural accumulation of water, the post office owed no duty because the ice was open and obvious). Based on the photographic evidence and Plaintiff's own testimony, the Court can easily conclude that the ice patch here was open and obvious. And Plaintiff cannot hold Defendant liable as a result.

A picture is worth a thousand words, and the record here includes three photographs of the ice patch taken within minutes of Plaintiff's fall. (Doc. 13-1 at 4–6). Even a cursory glance at them shows that the ice patch is immediately apparent. Given that, a "reasonable person" would have "readily discover[ed] it . . . upon ordinary inspection." *Bittner v. Walmart Stores Eac, Inc.*, No. 3:16-CV-00151, 2017 WL 2633189, at *4 (S.D. Ohio June 19, 2017). Because the ice patch was open and obvious, Defendant owed no duty to Plaintiff. *See, e.g., Ewers v. Lowe's Home Centers, LLC*, No. 1:18-CV-554, 2019 WL 5455532, at *5 (S.D. Ohio Oct. 24, 2019) ("As Lowe's points out, the photographs demonstrate unequivocally that the cable was 'open and obvious' in that it would have been readily observable to anyone in the vicinity.").

Beyond this Court's observations, Plaintiff admits that she saw the ice right away. (*See* Doc. 13-2, 36:21–24). She recognized the potential danger and tried to avoid the ice so that she would not fall. (*See id.*, 42:18–20). It is clear, therefore, that she had actual knowledge of an open and obvious hazard. *See, e.g.*, *Jackson*, 2011 WL 1167756, at *3 (finding that ice was open and obvious because the plaintiff had actual knowledge of the danger before her fall" since she "saw

the ice, recognized the danger caused thereby and took precautions to avoid the danger"); *Kaeppner*, 2006 WL 1932327, at *6 ("Even if the specific patch of ice where [plaintiff] fell was not openly visible, [plaintiff] was undisputedly aware of the surrounding snow and that the sidewalk was, generally, wet and icy, with spots of water, ice, and salt," and accordingly, "could have reasonably guarded against" the condition).

Further, Plaintiff's argument regarding the placement of the warning cone does not change the Court's conclusion. She argues, essentially, that the cone caused more harm than good: "[T]he true nature of the hazard" was "not the ice itself, but the fact that only part of the icy sheet was marked with the cone," creating a "hidden hazard for customers stepping around the marked area." (Doc. 14 at 6). But the cone did not make the ice any less obvious. In fact, it had the opposite effect. Indeed, "[w]hile individuals normally have an obligation to look for open and obvious defects, that responsibility is magnified when accompanied by a warning sign." *Gingrich v. D'Ambrozio*, No. 2008-T-0103, 2009 WL 1743930, at *6 (Ohio Ct. App. June 19, 2009). And that is what occurred here.

In sum, the ice patch was open and obvious as a matter of law, and Defendant did not owe Plaintiff a duty.

### *3. Assumption of Risk*

In a final attempt to place a duty on Defendant, Plaintiff argues that she had no alternative but to walk on the ice. (*See* Doc. 14 at 7). Specifically, she asserts that "[her] assumption of the risk could not have been voluntary" because she had "no reasonable alternative" to enter the Post Office. (*Id.*). But assumption of risk concerns causation and comparative negligence—not duty. *See Daher v. Bally's Total Fitness*, No. 2014-L-061, 2015 WL 1138723, at *5 (Ohio Ct. App. Mar. 16, 2015). Therefore, "it does not matter whether [Plaintiff] had a viable alternative" in this case

11

because the Court has already found that Defendant had no duty. *See id*. In other words, Plaintiff's assumption of risk argument puts the cart before the horse.

Moreover, it is worth noting that, unlike the facts of the cases she cites (*see* Doc. 14 at 7), Plaintiff was not trapped in a building with no other alternative. *See, e.g.*, *Mizenis v. Sands Motel Inc*, 362 N.E.2d 661, 664 (Ohio Ct. App. 1975) (noting that plaintiff's only alternative to using the slippery stairs was to "stay in [a] motel room until the spring thaws melted the snow and ice"). Plaintiff admits that she could have avoided the ice by walking behind the cars. (*See* Doc. 13-2, 59:8). Alternatively, it appears from the photos, that there was room to walk between the edge of the ice patch and the car parked in the handicapped space. (*See* Doc. 13-1 at 4–6). More importantly, Plaintiff could have parked her car elsewhere. These alternative options are not "too absurd to suggest as a practical remedy[.]" *Mizenis*, 362 N.E.2d at 664.

In sum, Defendant did not owe Plaintiff a duty to protect her from the wintertime conditions that Ohioans have come to know all too well.

### B. Breach

Finally, even assuming *arguendo* that the Post Office had a duty, the Court concludes that, by placing at least one warning cone on the ice patch, it satisfied its duty. In factual situations, like here—where the defendant warned invitees of the hazard and the plaintiff saw the warning before falling—a "merged analysis" of duty and breach is useful. *See Gingrich*, 2009 WL 174390, at *6. In *Gingrich*, a contractor removed old flooring from the landowner's office building and left a sizeable hole in the floor. *Id*. at *1. The plaintiff, upon entering the building for a medical appointment, saw a sign on the front door, directing people to "please use side door." *Id*. at *6. She used the front door anyway and fell into the hole. *Id*.

The trial court found that the defendant did not owe the plaintiff a duty because the hole was an open and obvious danger. *Id*. at *4. In affirming that finding, the court of appeals focused on the warning sign. While "the legal concepts of the lack of a duty to warn due to an open and obvious danger and the landowner satisfying his duty to warn by posting the warning sign are distinct," the case, "create[d] a very limited situation where a 'merged' analysis of these concepts [was] appropriate." *Id*. at *6. *Id*.

The same analysis applies here. Like the sign on the door in *Gingrich*, the warning cone provided notice of the dangerousness of the ice patch in its entirety. *Id*. And, "at the very least, [the cone] warned persons [traversing the area] to be extra cautious" because "obviously," the presence of a warning suggests that "something may be wrong." *Id*. Therefore, even if the Post Office had a duty to protect Plaintiff from the ice, it "discharged that duty by [placing a cone] warning her of the potential danger." *Id*. For this additional reason, Defendant is entitled to summary judgment on Plaintiff's negligence claim.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED**.

IT IS SO ORDERED.

Date: February 21, 2020  /s/Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE